May it please the Court, Sean Kennedy on behalf of the previous petitioner, Karl Marx, this is another Miranda case, and it raises an interesting question in my opinion, which is, what really is the purpose of the Miranda warning if the petitioner that made false statements about matters that are directly covered by the warning? What part of this was false, Mr. Kennedy? Well, I think, well, the proper Miranda warning was given, but what was false is when Mr. Marx invokes, and I think that's exactly what the statement, I really want to talk to my lawyer too, though, is, is followed up with a question. Under Edwards, I think it should have stopped right there, but it's followed up with a question. Well, are you saying that you want a lawyer here now before you talk to us? And Mr. Marx asks, well, can he come here now? And he's told, no, no, he can't, we can't, we can't get you a lawyer, you'll have to wait until you go to court to get a lawyer. That's false, Your Honor. In what respect was that false? Well, it's, it's incorrect. Was there a lawyer there at the station house? There was not a lawyer at the station house, but under California law, the defendant is entitled at the very least to make three phone calls, and it specifically states it, to his lawyer or to a public defender. But the question wasn't, can I use the phone? The question was, can he come here right, what was the question that the, the answer that you say is false? The question was, can he come here right now? Yeah, can he come here right now? And the answer was, no, I mean, we can't get you an attorney now. I believe that that's false. I think that a lawyer. It was 9.07 a.m., if I recall it right, the interview started right around 9.00 something. Yes. And let's say we had sort of frozen the scene right there when he asked the question. Try to get a lawyer. What would have happened if he'd said, I want to talk to a lawyer right now? Well, the public defender's office in Compton was open at that time. This was a Thursday. I'm sorry, where was the question being done? At South Bureau Homicide, which I believe is ordinarily Miranda advisements are staffed by the public defender's office in Compton. And they have staff attorneys available for Miranda advisements from 7.30 a.m. to 5.30 a.m. Monday through Thursday, and a little bit later on a Friday. I believe this was a Thursday. So if Officer Tinzano, who's a very experienced police officer, if you look at the tape, I mean, he knows the law of California, I think could very well have answered the question and also a friendly guy. Very, very. But, Your Honor, I think the answer, as this court has held in Alvarez, is a simple yes. But even if that's not the law. Well, I'm sorry, I was trying to explore. You didn't give me an answer. So what would have happened? You said, I don't know, you said the office was open, but that doesn't tell me anything at all. I'm sorry. The office can be open, there can be no lawyers there. It could take days or hours or weeks. What does it mean? Okay. Let's say they had wanted to get a lawyer for him as quickly as possible. What would have happened? What do we know? What is the reality? Okay. Well, I can tell you what happens with me. You know, I'm a federal public defender. When someone calls me, interrogated by the FBI, and the client, maybe a repeat client or someone who knows that I'm on duty, calls me, I say, I don't want you to say anything until I'm there. And then it ceases, it stops. And I think that's exactly what would have happened here if the state public defender. The full and correct answer, in your view, would have been, so let's say I'm Mr. Marks and you are Officer Tizano, and you're not going to give me the correct answer. What is it that, what is the trigger question? Can he come now? I'm trying to say with Attorney Powell, I'm trying to say, do I need my attorney right here with me? Let's just say, can I come now? Can he come here now? Can he come here now? So I've just said that to you, you are now Officer Tizano, to give me a complete and truthful answer, what would you say? Yes. And then stop and wait until he has a chance to use the phone as he's required to under law. And then I assume the attorney will intervene because that's what I would do. And I would call the officer and we would have a discussion. And if it were me, I would say, we're not going to talk. Do you think you can call a lawyer right now or what? Yes, I think the answer is yes, you can. How does Mr. Marks get the number to call the public defender's office? Well, if the California Penal Code provisions are complied with, it's supposed to be posted there. I can't tell if it's posted on the left hand of the wall. There is something way up there on the wall that may be a sign that has this posting. I can't tell from the videotape myself. But supposedly at these facilities, that information is supposed to be posted for arrestees. And so state law requires that they have an advisement, an advisement with the lawyer's phone number? Yes, it's supposed to say you have the right to make these phone calls and it's supposed to provide the number of either the public defender office or like some indigent panel system that covers that particular area. And it's supposed to be right there in the interrogation room, that's what state law provides? Well, that I'm not sure. I'm not sure where it's supposed to be posted. It refers to that this is supposed to be posted. I don't frankly know if it's supposed to be in the interrogation room. I only brought it up because it looks like there's something up there, but I can't read it or tell what it is at all. So I think the answer is a yes. And that's what Alvarez said. It's a simple and ambiguous yes. But even if this court thinks I'm going too far with the yes, it certainly ought to be a truthful answer like, well, you have the right to make a phone call. But it shouldn't be. No, no, we can't get you a lawyer here. That is false. And it's a falsity that goes to the heart of the advisement. And what is the purpose of these advisements if they don't have to be truthfully followed through on if there was a legitimate question? Frankly, under Edwards, which is a Supreme Court case, I think the invocation I really want to talk to my attorney to go is a unequivocal, declarative, clear invocation of the right to counsel. So there shouldn't even be questions after that. Let's say you're right. One of their arguments is that it's harmless. There were two or three eyewitnesses to this to this offense, including the daughter or rather the was the Michael King, an adult daughter and the other nephew. Yes, that was brought up that this is harmless. I respectfully disagree. This was a short trial and the jury was out for three days. And Mr. Marks himself, his connection to the murder was not necessarily clear. He he didn't do the shooting. He was present. Somebody else did the shooting. And the reason why I believe the taped confession was so important is because it was used to reveal his participation, how he was in on it from the beginning. Unlike the defense, which argued that he happened upon a separate murder that was ongoing with the eyewitnesses who testified that he instructed the shooter to bust on him and bust. Yeah. Bust on him, whatever that means. But I think that that was cleared up for the. Well, I have to say, I don't know what that means, but the eyewitness saw him pull the decedent out of the truck and go through his pockets. Yes, that is true. But the defense was not that he wasn't there. The defense was that he happened to be there and exploited a terrible situation for his own advantage and that he, in effect, took money away. But he was not in on this murder. He just happened on it and then exploited it for his own. And the confession, I think, was used to indict many of the defense theories because it was used to show that he was in on it. How many witnesses testified that he said bust on him? I believe two. And three witnesses actually put him at the scene. Yes. And two of them testified to the statement. Yes. Pretty solid. Well, I mean, if it were that solid, it seems like a long time for a jury to deliberate and to ask for a readback of the testimony of one of the witnesses who said that. I mean, three days for what is, I mean, a pretty simple case is a long time for a jury to deliberate. And, you know, the defense did have an explanation. I see that my time is almost concluded. I'd like to save a little for rebuttal. Thank you, Your Honors. But I'll let you keep all those. Thank you. Good morning, Your Honors. Stephanie Brennan for Respondent, Warden A. A. Lamarck. Your Honors, in this case, the district court's judgment should be affirmed because Petitioner is not entitled to habeas relief. Speak up just a smidge for me. Sure. He's not entitled to habeas relief. And he is not entitled to habeas relief because when viewed under ADEPA's highly deferential standard. You're not proud of what Officer Pisano did, are you? Excuse me? You're not proud of what Officer Pisano did, are you? Whether I would have done something different is not the issue. Whether he could have acted differently is not the issue. Well, what about his response to this passage here? OK, you know, I'll talk to you all. But I really want to talk to my attorney, too, though. Isn't that a direct invocation? Unambiguous invocation? No, Your Honor. Right to counsel? Not under Davis. When we look here, he's already been Mirandized. And he says that he understands those rights. Under Davis, the Supreme Court tells us that that is the primary protection. He understands the rights and he wants to talk to his lawyer. And he tells the police also that he wants, before he ever makes that statement, he says that, yes, I want to talk to you. And how is that inconsistent? He may well want to talk to the police with his lawyer there. What does one have to do with the other? Well, I mean, this is exactly the same as the Scandinavian Red. I want to talk to you. I want to talk to my lawyer, too. Exactly. And that's one way of looking at it. I waive my right to be silent, but I don't waive my right to have my lawyer. You can do that, right? He could do that. I do that all the time. He could do that. But there's another way of looking at it, which is the way that the state courts had seen it and the way that the district court saw it, which is then leads us to the other way. Which is the other way of saying, I want to talk to you and then I'd like to speak with an attorney, which is then at that point making it equivocal at that point, which is when the detective then asked him, so are you saying that you want to talk to an attorney who is sequential? Like after I talk to you, I want to talk to my lawyer. That's that's you think that's a reasonable construction? Given that he was already Mirandized and said he understood it and saying that he wanted to talk to them. And then he also said that, yes, it's a way of viewing it and therefore makes it equivocal, makes it ambiguous. And therefore, it doesn't under Davis make it an invocation of his right to counsel. And what about that statement from Officer Zong where he says he can't he can have a lawyer in court, but not now? That's wrong, isn't it? He says it's a true statement that he will have a and we will have counsel in court whether and as the question is whether you can have a lawyer now. And he says you can have a lawyer. When you go to court, the clear implication is not now. Later, you'll have a lawyer, not not now. I don't see where there is any other way of reading it. Well, I disagree, Your Honor, because it's it could be dishonest. It could be viewed in that or it could be viewed in the sense of not completely answering the question. However, what Miranda Miranda does not require and under Davis, the Supreme Court says that that attorneys need not be producible on call. Therefore, if you look at what the detective's question I mean, the question was earlier saying, are you saying that you want to speak with an attorney before you speak with us? And then his subsequent answer, meaning when you add the Miranda awarding himself, actually, in fact, he could call a lawyer right then and he could have gotten a lawyer on the phone if I did. I don't know if that's true. And that information, for my recollection of the record, the information about whether you're saying that that that officer was telling the truth, that that that when he says, can I talk to a lawyer now? And he says, no, not now, later that he was right. He, in fact, could not have a lawyer. Now, which is on a specific said, no, I mean, I mean, we can't get an attorney for you right now. Yes, that's that's not a true statement. Well, the thing is, he could have been connected to the public defender and within minutes, maybe a lawyer would be on the spot. Perhaps that is true, but it wasn't some of the information that was before the state courts. And at the time that these decisions were sort of made, the information about what duty attorneys said, excuse me, you say that English, I'll attempt to. English has a second language. It was it was me, too. But that's best we have the. The fact of the matter is he could get a lawyer right then. Is there any dispute about that? That when he says, no, we can't get a lawyer for you right now, I may have taken half an hour, be taking an hour, maybe two hours. But there's no doubt about the fact that this man could have had a lawyer and that when the officer said, no, you can't have one right now. You'll have one later in court. He was lying. That's the way of viewing it. Also, the way of viewing it is saying right here now at this immediate second, no, you can't. There is not one right now. The detective never said, no, you cannot have one during questioning the way to then interpret everything that was said during this point in time. Including just a statement. Let's say we disagree with you on that. Just assume we disagree with you on that, that that that, you know, that it's quite obvious that, you know, we can't make a lawyer materialize by snapping our fingers. So the magic to act like, you know, there's a lawyer. And the question that becomes when you talk about now, the question is, can you have a lawyer here with a reasonable short time? And, and, and, and that that was the question that was being asked and that was the question that was being answered. And then when he was having a lawyer, me pretty quick and the officer said, no, we can't get you a lawyer right now. We can't get you a lawyer pretty quick. You can have one in court. Let's say that's how we read that question and answer. Where are we left? I think your honor, we're still left with his still not making an unequivocal invocation of counsel. I think that under the Supreme Court's decision in, I'm sorry, at that point, the statement becomes false. If we're, if we're assuming under those facts, it would be a false statement, but yet that still does not vitiate the Miranda warnings themselves or his. So, so we now have a false statement by the officer on the very question of availability of counsel. Yes. The officer lies to him. Assuming that, yes. But that still does not, that still does not vitiate his. We also have his earlier statement where he says, I want to talk to you. I also want to talk to my lawyer. Yes. And at that, and I would submit to you that he's still at that point has not made an invocation, an unequivocal invocation of his right to counsel. And it's nothing that the detective said in any way vitiated or took away what those Miranda warnings were. Let's explore that. If the officer falsely tells him that he can't have a lawyer now, only in court, doesn't that make it, particularly dealing with a guy, I watched that tape and he wasn't too bright, at least it didn't look to me like he was too bright. The, the, doesn't that suggest that your choice is to talk now without a lawyer or not talk at all? Because you can have a lawyer in court. You can't have a lawyer for this interview. And why would he then invoke his right to counsel? Doesn't that sort of make it less likely he'll invoke his right to counsel because he's just been told not now, can't have a lawyer for this thing. No, because I would still say that it didn't in any way vitiate what the Miranda warnings were of saying you can have a counsel present during questioning and the prior question, the prior question. Doesn't that make it less likely for him, once he understood that question to mean is, look, you can't have a lawyer for this interview, so you can do this interview without a lawyer or not at all, that at that point his ability or willingness or likelihood that he'll invoke his right to counsel will be much less than if you are told, yes, take 20 minutes, we'll have a lawyer for you right here. At that point, he's not as, doesn't understand his right and he's not as likely to invoke it. I could see where one would say that it would make him maybe perhaps a way of looking at it of less likely to do so, but he still must do so. And that he's been told. It's been made less likely through a falsehood? I think that the cases that other circuits have decided on this matter. The Seventh and the Fifth Circuit have found that a misstatement or a deception by a detective does not change the warnings that were given. And you've used up your time. Would you take one minute to tell me why you say this is harmless? I'd say that it's harmless because prior to any of this tape being played before the jury, you had three witnesses identify the defendant. You had the eyewitness, King, who was, who identified him in the six pack and was also one of them that had heard defendants, I mean, had heard Petitioner say bust on him after Petitioner had swung at Miguel and then told his companion basically to shoot him. And then afterward, pulling him out of the truck. Is there any explanation of the word bust means shoot? He says bust on him and the companion shoots him. I don't see how there's any other interpretation of that. And then you have the daughter who identifies him, the daughter who, after they shoot her father, you're assuming a cause and effect there. He might have busted him in the mouth, could mean that. And the other guy on his own decides not to follow instructions. But I'm sure. I mean, I think that would be the evidence is, oh, my God, you shot him. I mean, bust him in the chops. And there was no evidence of that, especially given the fact that as soon as he shoots him, they both pull him up over the truck and then start beating him and then rob him. No, I mean, we don't have the dictionary of what is flying is what took him three days. What took him three days? Well, I would hope that in the first degree murder case that the jury would take some time to actually consider the verdict. And therefore, just the fact you're going to excuse me, you're going to never. If that was pretty clear cut, you know, there's nothing to do to sit around and say that's a verdict. Well, yeah, if if you take three days, if they take three days to deliberate, it must have been a little bit difficult. Well, it must have must not have been quite so clear cut as you make it out to be, I think, at least not to the jury. The only thing we can say about that, your honor, is we'd be merely speculating as to whether they had any problem with it. But that's the nature of how much we must speculate, because if we don't speculate, you lose. Yes, things, you know, but for the error of things, you know, we we have no choice but to speculate. If you want us not to speculate, then if we find the error, we just reverse and that would be that. Yeah, but you must help us speculate. So once you help my speculation, what took them three days? What took them three days? You could have them going to the food. Maybe they wanted to be off work a little longer. I don't know what what we are left with. Jury's just sort of saying, oh, I want I wonder if I can get an extra one additional day. Do they even pay for meals? I think they're giving us a small amount, but I'm not giving my infamiliarity with it. But yeah. But again, I mean, I don't know. Maybe they should do that in secret again. But getting back to it, your honor, the thing is that here you had the three people at the scene who identified him, who heard him say best on him. I mean, I really don't know how you can get a stronger case apart apart from that. I don't know. His his subsequent confession merely corroborated their already compelling testimony. OK. Thank you. Thank you. We'll take a short recess before the next case. All rise and stand and recess. As always, it's a pleasure to be with you. Oh, I know. I look forward to the next case. Yeah. I'm back. OK, so this should go in. What's that? No, it's not. Oh, OK. We let's we rubber band. I'm sure that they're in order. This needs to go. OK, so that's export. There's plenty, you know. Go ahead and put those in the back. This is later. I don't know if the Japanese should be. If he doesn't, let's go ahead and get an order going at least. So that we're ready to run because we have.
judges: Kozinski, O'scannlain, Silverman